## Wytheville.

NORFOLK & WESTERN RAILWAY CO. V. REEVES & McNEIL.

JUNE 29, 1899.

· Absent, Riely, J.

1. EVIDENCE—*Allegata and Probata.*—Evidence of damages not laid in the declaration is incompetent.

2. EVIDENCE—*Report of Commission Merchant—Hearsay.*—In an action against a common carrier to recover for loss on cattle delayed in transit, the testimony of the shipper ,as to what his commission merchant reported as the amount of the sales of the cattle is hearsay. The amount of such sales should be shown by a witness who has positive knowledge of the transaction, and the defendant should have an opportunity to cross-examine the witness.

3. EVIDENCE — *Hearsay—Newspaper Quotations—Price Lists.*—Market quotations published in a newspaper, and price lists furnished by commission merchants, and opinions based solely thereon, are alike hearsay, and cannot be received in evidence as proof of the prices actually paid for an article, in the absence of proof of the authority upon which such quotations and lists were made.

4. COMMON CARRIERS—*Injury to Stock—Presumption—Burden of Proof.*— If a shipper contract to load and care for live stock at his risk, and the evidence tends to show that the cars were overloaded, and the stock neglected by the shipper, in an action by the shipper for injury to the stock he is not entitled to an instruction that injury to the stock in the custody of a common carrier for shipment raises a presumption of negligence against the carrier, and that the burden is on the carrier to show that the injury arose from a cause for which it is not responsible. Such instruction should be qualified by adding " except such injury as results, or may have resulted, from the negligence of the shipper, or the inherent vice or propensity of the animal."

5. INSTRUCTIONS—*Evidence to Support.*—An instruction should not be given when there is no evidence ,which tends to support it.

6. Common Carriers—*Limiting Liability—Section 1295 of Code—Damages.*—Upon the terms and conditions set forth in section 1295 of the Code, a common carrier may limit its liability for freight to such damages as result from its negligence prior to delivery to its connecting carrier. When such contract has been made, it is for the jury to determine from the evidence, under proper instructions from the court, whether or not the damage or injury complained of occurred while the freight was in its possession or upon its line of road.

7. Common Carriers—*Claim for Damages—Notice—Waiver.*—A stipulation in a bill of lading that a shipper shall, within five days after the arrival of stock, give notice to the freight claim agent of the carrier of any claim for damage to the stock will be deemed to be waived where the bill of lading is blank as to the name and location of such agent, and the location of his office, and the same is unknown to the shipper.

Error to a judgment of the Circuit Court of Smyth county, rendered December 15, 1898, in an action of trespass on the case, wherein the defendants in error were the plaintiffs, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Bolling & Kegley* and *W. A. Glasgow, Jr.*, for the plaintiff in error.

*Fudge & Bell* and *B. F. Buchanan*, for the defendants in error.

Cardwell, J., delivered the opinion of the court.

Defendants in error, trading as Reeves & McNeil, brought their action in the Circuit Court of Smyth county against the Norfolk and Western Railway Company upon five several and separate contracts, or bills of lading, for the carriage of live stock from Marion, Va. Five of the car loads of stock were consigned to the shippers themselves. There were two car loads of sheep and one of cattle billed for Philadelphia, Pa.; one of cattle billed for Lancaster, Pa.; and another of sheep for Norfolk,

Va. The sheep and cattle so shipped were loaded on the cars at Marion, late in the evening of December 24, 1897, but were delayed there about twenty hours, owing to a wreck on the road of the defendant company at Peek Creek Mountain. The other cattle were loaded and left Marion at 3:38 P. M. January 4, 1898, billed to A. W. McClure, Media, Penn.

For each car load of sheep or cattle the defendant company issued its bill of lading, which was signed by its agent at Marion, and by T. E. Reeves, for Reeves & McNeil, the shippers, wherein, after setting out the rate of freight to be paid by the shippers, and that it is the lower published tariff rate based upon the expressed condition that the carrier assumes liability on the said live stock to the extent only of the following agreed valuation, upon which valuation is based the rate for the transportation of the said animals, &c., the following provisions, among others not necessary to be specially mentioned, appear:

" That the said shipper is, at his own sole risk and expense, to load and take care of, and to feed and water, said stock whilst being transported, whether delayed in transit or otherwise, and to unload the same, and neither said carrier or any connecting carrier, is to be under any liability or duty with reference thereto, except in the actual transportation of the same.

" That in the event of any unusual delay or detention of said live stock, caused by the negligence of the said carrier, or its employees, or its connecting carriers or their employees, or otherwise, the said shipper agrees to accept as full compensation for all loss or damage sustained thereby the amount actually expended by said shipper in the purchase of food and water for the said stock while so detained. That no damage which may accrue to the said shipper under this contract shall be allowed or paid by the said carrier, or sued for in any court by the shipper, unless a claim for such damage shall be in writing, verified by the affidavit of the said shipper or his agent, and delivered to the freight claim agent of the said carrier at his office within five

days from the time said stock is removed from said car or cars; and that if any loss or damage upon the line of a connecting carrier, then such carrier shall not be liable unless a claim shall be made in like manner, and delivered in like time, to some proper officer or agent of the carrier on whose line the loss or injury occurs. That in case of any loss or damage whereby any legal liability or responsibility shall or may be incurred by the terms of this contract, that company alone shall be held responsible therefor in whose actual custody the live stock may be at the time of the happening of such loss or damage.

" And I do hereby acknowledge that I had the option of shipping the above live stock at a higher rate of freight, according to the official tariff, classifications, and rules of the said carrier and connecting carriers, and thereby receiving the security of the liability of the said carrier and connecting railroad and transportation companies, as common carriers of the said live stock, upon their respective roads and lines, but have voluntarily decided to ship same under this contract, at the reduced rate of freight above first mentioned."

By another clause of each of the contracts, an agent of the owners and shippers was to ride free, and to be with the train, and to take care and charge of the cattle and sheep.

The grounds upon which the plaintiffs claim damages of the defendant company, to the amount of $1,700, as alleged in their declaration, as to four of the car loads, are that by reason of unnecessary delay in the transportation of the cattle and sheep by the defendant company for the space of twenty-four hours, plaintiffs were prevented from selling the same on the Monday's market in the cities of Philadelphia and Norfolk, following the date of the delivery of the stock to the defendant company for transportation, which said market-day in said cities is and was well known; and that the sheep and cattle shipped to Philadelphia and Norfolk were shipped by plaintiffs for sale on the Monday's market next after their shipment. And as to the two

remaining car loads of cattle, billed to Lancaster and Media, Pa., respectively, it is alleged that the defendant company did not deliver the cattle to plaintiffs at Lancaster, or their agent at Media, within a reasonable time and in a safe condition, because of the carelessness, negligence, and default of the defendant company in the premises.

At the trial of the cause the jury rendered a verdict for the plaintiff, assessing damages to the amount of $706.50, upon which judgment was entered. Whereupon the defendant company obtained from this court a writ of error and *supersedeas*.

The first assignment of error is that the Circuit Court erred in overruling the objection of the defendant company to a question asked T. E. Reeves, of the firm of Reeves & McNeil, plaintiffs, when on examination as a witness in his own behalf, and in permitting the witness to answer the question; the question being: " What extra expense, by failing to reach the market were you put to? " To which witness answered: " Commissions, $1 per head; my railroad fare from Lancaster to Philadelphia, and two or three days extra time."

The damages it was sought to prove by the question and answer were not claimed in the declaration, therefore it was error to admit this evidence.

The next error assigned is that the Circuit Court erred in overruling the motion of the defendant to exclude the answer of the witness, Reeves, to the question propounded by the plaintiffs: " What did you get for the cattle which you sold in Philadelphia? " To which he answered: " Holmes & Clark sold the cattle and sheep for us, and I got $515 for the cattle. This information I got from Holmes & Clark, my commission merchants. I know nothing further about it except what I got from them."

What the witness received for the cattle sold in Philadelphia was a matter capable of direct and positive proof. It should have been shown by a witness who had a positive knowledge

of the transaction, and the defence should have had the oppor-
tunity to cross-examine such witness. The answer to the ques-
tion was clearly hearsay, and should have been excluded. *Gulf
C. & S. F. Co.* v. *Baugh*, 42 S. W. 45; *Hess* v. *Railway Com-
pany*, 40 Mo. App. 202.

The third assignment of error is based upon the action of the
court below allowing the market to be proved by the testimony
of P. G. McNeil, a witness in his own behalf. The witness, after
having said that the sources of his information as to what the
cattle would have brought on a particular market-day were quo-
tations of market prices in Philadelphia published in the *New
York World*, and a price list received by him from a certain
firm of commission merchants, stated what, in his opinion, his
cattle would have brought had there been no delay in their
delivery in Philadelphia for the Monday's market next following
their shipment.

In *Wheelen* v. *Lynch*, 60 New York Reports, 474, it was
held that a shipping and price current list was inadmissible as
evidence without some proof showing how, or in what manner,
it was made up, where the information it contained was obtained,
or whether the quotation of prices made were derived from
actual sales or otherwise. Says Miller, J.: " It is not plain how
a newspaper containing the price current of merchandise, of
itself and aside from any explanation as to the authority from
which it was obtained, can be legitimate evidence of the facts
stated. The accuracy and correctness of such publication de-
pend entirely upon the resources from which the information
is derived. Mere quotations from other newspapers, or infor-
mation obtained from those who have not the means of pro-
curing it, would be entitled to but little, if any, weight. The
credit to be given to such testimony must be governed by ex-
trinsic evidence, and cannot be determined by the newspaper
itself, without some proof of knowledge of the mode in which
the lists were made out. As there was no such testimony, the

evidence was entirely incompetent, and should not have been received."

In the case at bar, the witness was permitted to testify as to what his cattle would, in his opinion, have brought on a certain market-day, based upon the market quotations in a certain newspaper and a list of prices furnished him by commission merchants, when neither the newspaper nor the price current would have been competent evidence, and hence the statement of the witness based upon what the newspaper and the price current contained was all the more hearsay, and should have been excluded.

Exception is taken to the action of the court below in giving plaintiff's instruction No. 1, objected to by the defendant company, and in amending defendant's instructions Nos. 2 and 3, and refusing to give defendant's instructions Nos. 5, 6, 7, and 8.

Plaintiff's instruction No. 1 told the jury that injury to live stock, in the custody of a common carrier for shipment, raises a presumption of negligence against the carrier, and the burden is on it to show that the injury arose from a cause for which it is not responsible.

The contract between the parties stipulated that the shipper was, at his own risk, to load the cattle and sheep on the cars and take care of them, etc., and the evidence before the jury tended to show that the cars were overloaded, and the stock neglected by the shippers themselves in such manner as would cause the stock to shift and worry in the cars, to get upon and trample each other. Such being the case, we are of opinion that the defendant company was entitled to have the instruction qualified by adding at its conclusion the words: " Except such injury as results or may have resulted from the negligence of the shipper, or the inherent vice or propensity of the animal."

In *Hussey* v. *The Sarragossa*, 3 Woods (U. S.), 380, it was held that when the damage to the thing shipped is apparently the result of its inherent nature or inherent defects, the shipper

must show something more than its damaged condition before the carrier can be called on to explain. He must show some injury to the thing shipped, which cannot be the result of its inherent nature or defects, before the burden is cast upon the carrier to show that he is not in fault. See, also, *Smith* v. *Midland R. Co.*, 57 L. T. R. 813; Elliott on Railroads, pp. 2345, 2349; *Clark* v. *Rochester & S. R. Co.*, 67 Am. Dec. 205; *Penn. R. R. Co.* v. *Raiordon*, 119 Penn. St. 577.

Defendant's instruction No. 2, as asked, stated the proposition that a common carrier does not guarantee the delivery of live stock upon any particular market; that is, any particular market-day, and the court amended it by inserting the words " unless notified that the shipment was made for that market." The declaration does not allege notice to the defendant company that the shipments in this case were made for a particular market, and there was no evidence tending to show that the defendant company had any such notice. The instruction as offered should have been given, and the amendment thereto was error.

Defendant's instruction No. 5, refused, is as follows: " The court further instructs the jury that, if they believe from the evidence that the plaintiffs in this case entered into a written contract with the defendant to transport said stock in question (which was consigned to Media, Lancaster and Philadelphia, Pa.) to the terminus of its own road, and there to deliver it to the connecting carrier, and that it was agreed between the plaintiffs and said defendant in said contract that in case of loss and damage, whereby any legal liability or responsibility should or might be incurred by the terms of said contract, that that company alone should be held responsible therefor in whose actual custody the live stock might be at the happening of such loss or damage, and if the jury further believe from the evidence that the northern terminal of the defendant's road is in Hagerstown, Md., and that it safely, and in a reasonable time, delivered the said stock there to the Cumberland Valley railroad, and

that the damage, if any, occurred after it had been so delivered
to the connecting carrier, then they will find for the defendant,
unless they believe from the evidence that the plaintiffs or their
agent did, within a reasonable time after said delay or damage,
if any, make demands upon the said defendant for satisfactory
proof that said delay or damage did not occur while the said
stock was in its possession."

This instruction was based upon the contract in writing signed
by the parties, and governed by section 1295 of the Code of
Virginia, which provides:

" When a common carrier accepts for transportation anything,
directed to a point of destination beyond the terminus of his own line
or route, he shall be deemed thereby to assume an obligation for its
safe carriage to such point of destination, unless, at the time of such
acceptance, such carrier be released or exempted from such liability
by contract in writing signed by the owner or his agent; and, although
there be such contract in writing, if such thing be lost or injured, such
common carrier shall himself be liable therefor, unless, within a rea-
sonable time after demand made, he shall give satisfactory proof to
the consignor that the loss or injury did not occur while the thing was
in his charge."

In the case of the *Richmond & Alleghany Railroad Co.* v.
*Patterson Tobacco Co.*, 92 Va. 670, afterwards affirmed on
appeal by the Supreme Court of the United States, it was held
that " a common carrier is liable, under section 1295 of the
Code, for the loss of goods beyond the terminus of his own line
or route, if he accepts such goods for transportation to a point
beyond such line or terminus, and fails to enter into a written
contract with the shipper, signed by such shipper or his agent,
exempting the carrier from such liability.   And this is true,
though the shipment be an interstate shipment, and the carrier
issues to the shipper a printed bill of lading, signed by the car-
rier only, in which it is stated that it is mutually agreed that the
liability of each as to goods delivered beyond its own route shall

be terminated by proper delivery of them to the next succeeding carrier."

It follows from what was said in that case, that a bill of lading signed, as is the case here, by the shipper, limiting the liability of the carrier securing the stock for transportation, to such damages as resulted from its own negligence prior to the delivery of the stock to its connecting carrier, is, under the conditions prescribed in section 1295 of the Code, a valid and binding contract between the parties.

All the testimony on·this subject should have been submitted to the jury, under proper instructions as to the law bearing upon it, for the determination of the question whether or not, under all the circumstances, the damage or injury to the stock, if any, was the result of unnecessary delay in the transit of the stock to defendant company's connecting carrier.

There was no evidence in the case even tending to show that the plaintiffs or their agent did, within a reasonable time after the delay and damage of the stock, if any, make demand upon the defendant company for satisfactory proof that the delay or damage did not occur while the stock was in its possession or upon its line of road, but there was evidence tending to show that the defendant company had fully performed its duty under its contract. The evidence of the defendant company showed that the trains on which the stock was carried made unusually good time to the terminus of the defendant company's line of road, and to Norfolk, Va. It was competent for the defendant company to make the special contract of carriage with plaintiffs, evidence was competent to show that it had fulfilled that contract, and, when such evidence had been received, the instruction numbered 5 was proper, and should have been given.

The defendant company's instruction No. 6 was properly refused. It relates to the five-days' notice required to be given by the contract, and states the proposition that the plaintiffs cannot maintain this action because they failed to give notice

of their claim for damages to the defendant company within five days from the time when the sheep and cattle were unloaded from the cars at their destination, as stipulated in the bills of lading.

In our view of this case, it is unnecessary to consider the question whether or not a stipulation that such notice should be given within five days could be deemed reasonable, for where the bill of lading is blank as to the name and location of the carrier's freight claim agent, or where his office is located, it would be unreasonable to hold the shipper bound by such a stipulation; and, in the absence of knowledge on the part of the shipper as to the name of the freight claim agent, or the location of his office, the carrier must be held to have waived this requirement when he failed to insert in its bill of lading necessary information to enable the shipper to comply with the stipulation. In this case, the carrier's line of road extends from Bristol to Norfolk, Va., and from Roanoke, Va., to Hagerstown, Md., and all of the stock shipped in this instance, except one car load of sheep to Norfolk, were shipped to points beyond the terminus of the defendant company's road at Hagerstown, Md.; and the bills of lading are silent as to the name of its freight claim agent, to whom the notice was to be given, or where his office is located.

In the case of *Good* v. *Galveston, H. & S. A. R. R. Co.*, 4 L. R. A. 801, it was held that if a carrier sets up a claim to notice of a given fact, as a consideration upon which its liability to a shipper is to depend, it is incumbent upon it, when the notice was to be given to one of its officers or agents, to show that it had an officer or agent at or near the place where the notice is to be given.

The only remaining assignment of error that requires our consideration is the action of the court in refusing to give defendant's instruction No. 7, which told the jury that newspapers and letters from commission merchants and statements made

therefrom, based upon the recollection of witnesses giving the prices obtained for live stock on the Philadelphia markets on December 27, 1897, are not evidence, and cannot be received as such to show the prices that were actually paid for the same on that day.

Having permitted, as we have seen, the witness, McNeil, to state to the jury what, in his opinion, based upon information obtained from newspapers and statements from commission merchants, he would have obtained for his cattle on the Philadelphia market, the Monday next succeeding the shipment of the cattle, it was error to refuse to give this instruction.

As the judgment in this case, for the reasons already stated, must be reversed and a new trial granted, other questions which properly belong to the assignment of error to the action of the court in overruling the motion of plaintiff in error to set aside the verdict of the jury as contrary to the law and the evidence, will not be considered.

The judgment of the court below must be reversed and annulled, the verdict of the jury set aside, and the cause remanded for a new trial to be had in accordance with this opinion.

*Reversed.*