Syllabus.

## Richmond.

## THOMAS B. ROBERTSON v. VIRGINIA NATIONAL BANK.

### January 18, 1923.

1. BILLS, NOTES AND CHECKS—*Pleading—Issues—Recovery Upon Implied Obligations not Set Up by the Pleadings.*—In an action against the maker, a bank, and endorsers of a promissory note, plaintiff bank sought to recover upon the obligation of the endorsers upon the note, and not upon any implied obligation upon them resulting from the receipt of the money by the defendant bank. No issue as to whether such an implied obligation existed was before the jury, consequently, plaintiff could not recover from the endorsers upon such implied obligation.

2. BILLS, NOTES AND CHECKS—*Implied Obligation upon Receipt of Benefit of Note—Knowledge of Conditional Endorser—Questions of Law and Fact.*—A director of a bank endorsed a note of the bank on condition that his endorsement should not be operative unless the note was also endorsed by an absent director. The endorser knew that the proceeds of the note had been received and used by the bank, but claimed that he did not know this until after the money was paid on the note and the bank had been closed by the State authorities.

   *Held:* That the question of whether there was an implied obligation upon the endorser from the receipt by the maker of the proceeds of the note should have been submitted to the jury for determination under proper instructions, and should not have been decided by the court.

3. BILLS, NOTES AND CHECKS—*Conditional Delivery—Parol Evidence.*—A person may manually deliver a negotiable instrument to another, on its face containing a binding obligation *in praesenti* of such person to such other, with a contemporaneous verbal agreement that it shall not take effect until the happening of some specified event (as that others shall endorse it), and such condition is binding as between immediate parties and as regards a remote party other than a holder in due course. This does not violate the rule that a written instrument cannot be varied by contemporaneous parol agreement, but is only evidence to show that the instrument never had vitality as a contract.

4. BILLS, NOTES AND CHECKS—*Conditional Delivery—Parol Evidence—Questions of Law and Fact—Case at Bar.*—The instant case was an action on the promissory note of a bank endorsed by some of the directors of the bank. The endorsers claimed that they endorsed upon the condition, and with the distinct understanding between them and the payee, that their endorsement would not be operative or effectual unless the note was also endorsed by an absent director, and that the note was never endorsed by such director. The note sued upon was not in the hands of a holder in due course, but in the hands of the payee.

   *Held:* That, if this claim of the endorsers was established by the evidence, under section 5578, Code of 1919, the note never became binding as an obligation upon the endorsers, and that whether or not the claim was established was for the jury.

5. BILLS, NOTES AND CHECKS—*Conditional Endorsement—Case at Bar.*—Where a director of a bank personally endorsed a note upon condition that it should not become binding until endorsed by another director even if the endorser could be regarded as not an accommodation endorser—even if he could be regarded as bound as if he were a maker of the note—by the very terms of section 5578, Code of 1919, he could not be regarded as liable on the note in the absence of an endorsement by the other director.

6. BILLS, NOTES AND CHECKS—*Conditional Delivery—Evidence of Conditional Delivery—Case at Bar.*—In the instant case, an action against the makers and endorsers of a note, the chief defense of the endorsers was that their endorsement was on condition that the endorsement of another should be secured before the note became effectual. It was objected that there was no evidence in the record from which a conditional delivery could fairly be inferred.

   *Held:* That, in view of the testimony of the endorsers, this position was not tenable.

Error to a judgment of the Circuit Court of the City of Hopewell. Judgment for the plaintiff. Defendant assigns error.

   *Reversed and remanded for a new trial.*

This is an action by notice of motion instituted by the defendant in error (hereinafter called the plaintiff bank), against the People's Bank of Hopewell, Incorporated (hereinafter called the defendant bank), as the maker, and the plaintiff in error and others, as the endorsers, of a certain negotiable note made by the de-

fendant bank for the sum of $50,000.00, dated November 18, 1918, endorsed by the plaintiff in error (hereinafter called the defendant Robertson), and others, payable to the order of the plaintiff bank thirty days after date (which was not paid and was duly protested for nonpayment at maturity), and for certain protest fees. There was a trial by jury resulting in a verdict and judgment, entered accordingly, for the plaintiff bank against the defendant bank, the defendant Robertson and others of said endorsers as to whom process was served or accepted, for the sum of $32,266.49, as the balance due on said note after crediting thereon certain amounts realized by the plaintiff bank from certain collateral paper held by it.

There were a number of defenses set up by the defendant endorsers, including the defendant Robertson, by five special pleas, upon which the plaintiff bank took issue by five several replications thereto, by none of which was the existence of any implied obligation on the part of the defendants, Robertson and others, put in issue.   During the trial of the case one of these special pleas was stricken out on motion of the plaintiff bank over the objection of the defendants, Robertson and others, but as that plea was substantially the same as one of the others upon which the case was tried, the issues were not materially changed by the fact that such plea was stricken out.

The chief defense upon which the case was tried was that there was not a completed delivery of the said $50,000.00 note to the plaintiff bank; that it was endorsed by the defendant Robertson and the other endorsers, upon the condition on the part of the latter, and with the distinct understanding between them and the plaintiff bank, that their endorsement would not be operative or effectual unless the note was also endorsed by

one I. Berglass; and that the note was never endorsed by Berglass and, hence, never became binding as an obligation upon the defendant, Robertson, and the other endorsers.

The $50,000.00 note was executed on the night of its date, November 18, 1918, at Hopewell, at a called meeting of the board of directors of the defendant bank, at which all of the directors of that bank were present, except I. Berglass; and Mr. Wright, president, and Mr. Long, vice-president, of the plaintiff bank, were also present. The note was signed on the part of the defendant bank by its signature being affixed by its president, E. J. Becton, and by its secretary, C. W. Nixon, and endorsed by all of the directors of the defendant bank who were present at the time of its execution, including the defendant, Robertson. They constituted all who actually endorsed the note. The president and vice-president of the plaintiff bank took the note with them home to Petersburg that night. Plaintiff and defendants concur in the position that Berglass, the only other director of the defendant bank, who was at the time in New York, was expected by all parties to endorse the note on his return from New York. There is direct conflict, however, in the testimony for the plaintiff bank and for the defendants, Robertson and others, upon the question of whether the note was delivered to the president and vice-president of the plaintiff bank upon the condition on the part of the endorsers and understanding between them and such president and vice-president that their endorsement was not to be operative or effectual, so as to make it a binding obligation upon the endorsers or any of them, unless said Berglass also endorsed the note.

Messrs. Wright and Long, president and vice-president of the plaintiff bank, testified positively that there

was no such condition or understanding. The endorsers, Robertson, Dr. Tabor, Goodwin, and Dr. Bowles, testified positively that there was such condition and understanding, and that the note was taken by the plaintiff bank, by the hands of its aforesaid president and vice-president, upon that express condition and understanding assented to by them.

Dr. Tabor testified to the effect that the note was endorsed and delivered as aforesaid upon the express condition and understanding aforesaid, and that either Mr. Wright or Mr. Long stated at the time "that the note would not be used until the other director's name" (Berglass) "was put on the note."

Goodwin testified to the same effect; and saying that: "The note was not to be used until Mr. Berglass signed it;" that Mr. Berglass was expected back "on any train;" and that Messrs. Wright and Long were "right there" when this understanding was reached, and while he himself did not hear either of them express themselves on the subject, the circumstances were such that, according to the testimony of this witness, they assented to this understanding.

Barbour testified to the same effect.

The defendant, Robertson, testified to the same effect, and (to quote a portion of his testimony), in this connection, said this:

That on the aforesaid occasion when the $50,000.00 note was executed and endorsed as aforesaid, Messrs. Wright and Long stated that they would take the matter up with their board of directors and "let us know if the board of directors approved it;" and that when Messrs. Wright and Long left the meeting, "they went out with (the) understanding, that Berglass's signature was to be secured to the note before it became valid; and we had our especial reasons for insisting on that

because Berglass was considered then the wealthiest man on the board of directors  *   *."

The following is also taken from the defendant, Robertson's, testimony appearing in the record:

"Q. But it was unquestionably understood that you were to get some money the next day?

"A. That was promised, that they would have some the next day.

"Q. And that was to go on this loan of $50,000.00?

. "A. Yes, they did not want the whole $50,000.00 that day.

"Q. But it was to go on this loan of $50,000.00?

"A. Yes.

"Q. And they were to have that early in the morning, so as to get it here for the contemplated run, weren't they?

"A. Well, the cashier stated that he had about $5,000.00 in the vault at that time; that he could stand it a while, but that it could not last all day; that he did not have enough to last all day; and that he would have to have some and that he thought the best time to get it was early in the morning before they opened up.

"Q. Now, was there any statement made as to how much money you were to get that next morning?

"A. I do not recall the definite amount that they stated; it was not a large amount; it was not large compared with the loan; it was a portion of the amount that they anticipated making the loan for.

"Q. But, it was a portion of that loan?

"A. They needed the money, and, if the loan went through, they expected to have it deducted from the amount, and, if the loan did not go through, they expected to pay it as loaned, whatever they got; if they got $10,000.00 and the loan did not go through, they would pay it.

"Q. What security did they have for that $10,000.00?

"A. They already had the best assets of the bank.

"Q. What security would they take for this $10,000.00?

"A. That was not decided on, if the other loan did not go through it was not decided as to that part; in other words if they got the $10,000.00, or whatever was the amount, I am not sure it was $10,000.00, but it was at least that, and if the big loan had not gone through they were to owe the Virginia National Bank $10,000.00 and would have assigned to them assets enough to cover it. That is what we expected to do when they put the conditions up to us; that they would submit the proposition to the directors of the Virginia National Bank, and, if they agreed to it, we would have the $50,000.00, and if they did not agree to it, we would be obligated only for what cash we got. I think that is as clear as I can state it.

"Q. Now, from your statement, they were not to take the $50,000.00 if the loan did not go through, and you had been advanced money. What security would they have for it?

"A. That was a conditional affair that never arose. The condition that I am stating never arose, but, in the event that the Virginia National Bank had declined to make the $50,000.00 loan, we anticipated getting some money the next morning. If they had refused to make the loan, we, having gotten the money next morning, would have owed them that $10,000.00, and the bank was willing to give the security, I am satisfied; their assets.

"Q. What security were they to give for that?

"A. They would hand it over, their assets. The Virginia National Bank had all their assets anyway.

"Q. The assets were in the end, as far as that is concerned, assigned with the note?

"A. They had possession of all of the collateral of the bank, and they could pick out what they wanted; they took with them the assets of the bank that night. The Peoples Bank's hands were tied.    They could have held the whole of the collateral for the $10,000.00 if they had wanted to; we could not have gotten it back from them.

"The Court:   Did they carry the collateral away that night?

"Witness:    My recollection is that they did.

"Q. And they carried the note away that night with the collateral, didn't they?

"A. I suppose they did.   I did not see them carry the collateral, but we went over the collateral that night and passed on the value of some of it, in some cases; we did not go over all of them.   I am not sure that they took the note in hand that night.   I do not know that they did.   I presume that they did, but I did not see either Mr. Long or Mr. Wright pick up the note, after it was signed, and put it in his pocket.   I do not know that.

"Q. And you certainly did not assume that they were going to let you have a lot of money without security for it, with a shaky bank, did you?

"A. No, sir; but they had all of the assets on that evening, to take it with them.

"Q. The assets?

"A. I mean the collateral of the bank.

"Q. The collateral of the bank was attached to that note, wasn't it?

"A. Yes, it went with the note.

"Q. And they had the note and the collateral?

"A. Yes.

"Q. Now, do you mean to tell this jury that, with the note and collateral attached to it, they were after-

wards to separate the note and hand it back to you and keep certain of the collateral if they did not let you have the full amount of money?

"A.  I said that note—

"Q.  Do you mean to tell the jury that or not?

"A.  No; I do not mean to tell the jury that.   That is something that I never told them.   I mean this: That the borrowing of the $50,000.00 was a condition, and they stated, and testified to yesterday, if I am not mistaken, that they would submit to their board of directors the proposition which we had made to them, or to Sidbury, at this meeting, he acting as the spokesman, to borrow $50,000.00 to cover up all runs that would probably take place; that they wanted to get some money in the morning, but that they would submit that proposition to their board of directors, and if it was approved, we could get the rest of the money, and if it was not approved we did not expect to get the rest of the money.

"The Court:  If it was not approved by the board, according to your contention, you would be held on the note for whatever amount they advanced?

"Witness:  For whatever they sent down next morning.

"The Court:  That you all would have been liable for it?

"Witness:  We were bound to be liable for it, because they had possession of it.

"Mr. Mann:  That is exactly what I was going to ask.

"Witness:  They had possession of the collateral. There would be no note covering it, but they had the actual possession.   There would be no obligation of the individual directors.

"The Court:  There would not be?

"Q.  How were you going to separate it?   Scratch them off of the back of the note?

"A. If the Virginia National Bank had refused to let the Peoples Bank have the $50,000.00, they would not have a right to the note.   It was handed to them on those conditions.

"Q. They would have the right to have the security *pro tanto* as far as it went?

"A. Yes, sir.

"Q. In other words, if they did let them have the $50,000.00 they were to keep the note and the collateral?

"A. Provided the other man signed it."

The testimony shows that the cashier and vice-president of the defendant bank were in active charge of its affairs and transacted the business of getting the money from the plaintiff bank.   It was not all gotten at once. A part of it was gotten the next day after the $50,000.00 note was executed, $20,000.00 to $25,000.00, according to the testimony for the plaintiff bank, about $10,000.00 according to the testimony for the defendants, Robertson and others, evidence.   This was before the board of directors of the plaintiff bank had approved the loan— the meeting-day of such board being later in the week. The vice-president and cashier of the defendant bank went over to Petersburg early on the morning after the $50,000.00 note was executed and got some of the money.   Subsequently, just when we do not find stated in the record, the net proceeds of the $50,000.00 note was placed to the credit of the defendant bank on the books of the plaintiff bank; the amount of $19,000.00, owing on a certain prior note or notes of the defendant bank, was charged to such account and satisfied thereby, leaving only $31,000.00 of the newly borrowed money; the $10,000.00 or $20,000.00 or $25,000.00, as the case may have been, which was gotten as aforesaid on the early morning aforesaid, was also charged to

such account; and the residue of such $31,000.00 was gotten from the plaintiff bank by the last named officers of the defendant bank between that time and the close of business on November 26, 1918. The State authorities closed the defendant bank as of its close of business on the 26th of November, 1918. The defendant, Robertson, had no personal connection with obtaining said $31,000.00 from the plaintiff bank after the $50,000.00 note was executed. He testified to facts, however, which showed that he had constructive notice, about the time that the whole of the $31,000.00 had been gotten by the defendant bank, that such bank had gotten it; but he testified that he had not before that learned that Berglass had not endorsed the $50,000.00 note; and, later in his testimony, he said that he thought that the time he first learned that Berglass had not endorsed the note was after the defendant bank had been closed (which, as aforesaid, was at the end of the business day of November 26, 1918); and he added: "I will say this: That when I heard it, it was too late to have done anything, so far as I am able to know at this time"—which, in answer to a question, he explained as follows:

"Q. Too late to have done what?

"A. To have done anything towards making any change whatever, so far as I know."

It should be added that the testimony for the plaintiff bank is to the effect that its cashier let the officers of the defendant bank have the money, gotten by the latter on the day after the $50,000.00 note was executed, on account of the anticipated proceeds of the discount of that note, as the custom was for their board of directors to approve all loans approved by them, and that they, at the meeting aforesaid at which this note was executed, approved such loan and agreed with the of-

ficers and directors of the defendant bank, then present as aforesaid, that the plaintiff bank would discount the note and loan the money thereon, as was subsequently done. This, however, as appears above, was in conflict with testimony for the defendants, Robertson and others, on that subject.

There was other testimony bearing upon the aforesaid chief defense which is more or less conflicting; and there was other testimony bearing on the other issues in the case, which is not considered material to the decision upon the appeal.

All of the instructions given were as follows:

"A

"The court instructs the jury that the burden of proving its case is upon the plaintiff, and that it must prove it by a preponderance of the evidence, in each and every material allegation, in order to entitle it to recover, and unless you believe from the evidence that the plaintiff has so proven its case, you must find a verdict for the defendant.

"I

"The jury are instructed that the defendants in this case, who are endorsers on the fifty thousand dollar note shown in evidence, being directors and stockholders in the Peoples Bank of Hopewell, the maker of the said note, stand in a different relation to the said note than if they were endorsers who had no interest in the said bank, in that the proceeds of the said note, which went to the said bank, were in reality to be considered as going to the said endorsers, and that such endorsers, having received the benefits of the discounting of such note by the Virginia National Bank, are estopped to deny the validity of their endorsement thereon.

12

"II

"The jury are instructed that it was the positive duty of the defendants, as directors of the Peoples Bank of Hopewell, to acquaint themselves with such bank's affairs, and to seek and obtain knowledge of the facts concerning the final endorsement and discount of the note for fifty thousand dollars sued on in this case, and to seek and obtain knowledge of the source from which and the conditions under which the money was obtained for the use of such bank in the critical periods following the execution and endorsement of the said fifty thousand dollar note; and the jury are instructed that the said defendants cannot under the evidence in this case now avail themselves of any defense as to the delivery of the said note without the endorsement of I. Berglass thereon or as to any conditions under which the proceeds arising from said note were obtained from the Virginia National Bank.

"III

"The jury are instructed that, as there is no evidence in this case tending to show any loss to the defendants by reason of the alleged failure of the plaintiff to exercise reasonable diligence to realize on the collateral security on the note sued on, the jury must not consider such failure in connection with this case.

"IV

"The jury are instructed that under the circumstances of this case they cannot consider whether the plaintiff did right or wrong in wiping out all the loans that had been theretofore made by it to the Peoples Bank of Hopewell at the time it made the said fifty thousand dollar loan."

Instruction "A" was given at the request of the defendants, Robertson and others.   All of the other instructions were given at the request of the plaintiff bank.

Among the instructions requested by the defendants, Robertson and others, which were refused, were instructions B, C, D, E and F.   Instructions B, C, D, E and F, so far as material, were as follows:

"B

"The court instructs the jury that in order to entitle the plaintiff to recover it must prove its case as it has alleged in its notice, and that it cannot allege one state of facts and recover upon other and different facts than those alleged.   As to what facts are proven the jury are the judges.

"C

"The court instructs the jury that if the plaintiff is entitled to recover in this case, such action must be by reason of the notes sued on, and not by virtue of any contract that might be implied from the application of the proceeds of said notes.

"D

"The court instructs the jury that if you believe from the evidence in this case, that the note sued on, was delivered conditionally, no recovery can be had thereon, unless you further believe from the evidence in this case that the condition has been fulfilled.

"E

"The court instructs the jury that every man has a right to make a contract in those terms and words which

he selects and he can make any condition, however immaterial it may seem to you, a condition precedent to the enforcement of said contract, and unless that condition has been complied with, no obligation will arise from said contract, nor can the same be enforced against him.

"F

"The court instructs the jury that in determining what amount, if any, is due from the defendants to the plaintiff, you must decide whether or not the fifty thousand dollar note sued on was delivered conditionally, and if conditionally, were those conditions complied with, and if you find that the said note was delivered conditionally, and that those conditions were not complied with, you should find for the defendants. * * * "

After the trial court had instructed the jury and after argument by counsel, the jury retired to consider of their verdict, and were subsequently called into court. Whereupon the following questions were asked, answers given and occurrences transpired, as appears from a separate bill of exceptions:

"The court: Have you agreed upon a verdict?

"Juror: We are unable to agree.

"The court: Do you understand the matter?

"Juror: Yes, sir; I do.

"The court: Under my ruling, all of that evidence goes out entirely. There is nothing before you but the $50,000.00 note, which is admitted to have been signed, subject to certain credits which the evidence shows that they have received the money for; and you certainly ought not to have any trouble in getting together, now that the case is narrowed down to such a narrow compass. The note is there, and it is simply a matter of dollars and cents. Go back to your room.

"Mr. England: We are excepting to the language of the court.

"The court: All right. I reckon the stenographer has got it down.

"Return to your room, gentlemen, and consider it further, and see if you can not get together.

"The jury subsequently returned the following verdict: 'According to the court's instructions, we are compelled to bring in a verdict in favor of the plaintiff.'

'W. S. Robertson, Foreman.'

"The court: You will have to specify the amount. $32,266.49. Is that the amount you wish to put in there; if so, hold up your hands.

"(The jurors indicated the affirmative by holding up their hands.)"

\*     \*     \*     \*

. Thereupon followed a colloquy between counsel on both sides and the court and jury on the subject of interest, which resulted in the verdict being put in the form in which it was subsequently returned as shown below, by counsel at the direction of the court, the attorney for the plaintiff bank consenting to the verdict making no mention of interest. Whereupon the following occurred:

"Mr. Mann: That leaves the verdict of $32,266.49. You can sign it right here.

"(Thereupon the foreman signed the verdict.)

"The court: Report the verdict now as signed by the foreman.

"The clerk: 'We, the jury, on the issue joined, find for the plaintiff against the defendants, The Peoples Bank of Hopewell, Incorporated, C. E. Bowles, T. E. Barnett, L. B. Goodwin, Sidney J. Tabor, and Thomas B. Robertson, on whom notice has been duly served, in

the sum of thirty-two thousand, two hundred and sixty-six dollars and forty-nine cents.

'W. S. Robertson, Foreman.'

\*       \*       \*       \*

"The court: I am going to have the jury polled on that, to see whether or not that is their verdict.

"The jury was, thereupon, polled and asked whether or not that was their verdict, to which each juror responded in the affirmative; and, thereupon, the jury was discharged."

*A. L. Jones, J. N. England, William McK. Woodhouse,* and *R. E. Byrd,* for the plaintiff in error.

*R. H. Mann,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court.

In the view we take of the case it will not be necessary for us to pass upon any of the questions raised by the assignments of error other than the following:

1. Did the court err in taking from the jury all consideration of the defense of the defendant, Robertson, that the note sued on was endorsed and delivered upon the express condition and understanding, assented to by the plaintiff bank, that it was not to become binding as an obligation of such defendant unless it was endorsed by I. Berglass—as was done by the giving of instructions I and II and the refusal of instruction F?

The question must be answered in the affirmative.

[1, 2] Under the pleadings in the case the plaintiff bank sought to recover upon the obligation of the endorsers upon the note, and not upon any implied obliga-

tion upon them resulting from the receipt of the money by the defendant bank. No issue as to whether such an implied obligation existed was before the jury. Even if it had been, in view of the testimony of and for the defendant, Robertson, to the effect that he did not know that the money had been paid the defendant bank without the endorsement of the note by Berglass until after it was paid and the bank had been closed by the State authorities, the question of the existence of such implied obligation should have been submitted to the jury for determination under proper instructions, and should not have been decided by the court, as was done by instructions I and II.

[3, 4] Therefore, confining our consideration of the question above stated to the issue on the subject made by the pleadings, we find this:

Section 5578 of the Code provides as follows:

"Every contract on a negotiable instrument is incompleted and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties and as regards a remote party other than a holder in due course the delivery in order to be effectual must be made either by or under the authority of the party making, drawing, accepting, or indorsing as the case may be, and in such case the delivery may be shown to have been conditional or for a special purpose only and not for the purpose of transferring the property in the instrument. But where the instrument is in the hands of a holder in due course a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed, and where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved."

The instrument, in the instant case, was not in the hands of a holder in. due course, but in the hands of an immediate party.   In such case, under the section just. quoted, as stated in the note of the revisors thereto, "*   *   a person may manually deliver a negotiable in- strument to another, on its face containing a binding obligation *in praesenti* of such person to such other, with a contemporaneous verbal agreement that it shall not take effect until the happening of some specified event (as, that others shall endorse it).   This does not violate the rule that a written instrument cannot be varied by contemporaneous parol agreement, but is only evidence to show that the instrument never had vitality as a con- tract.   *   *   "   Citing *Hodge* v. *Smith*, 130 Wis. 326, 110 N. W. 192.

[5] Even if the defendant, Robertson, could be re- garded as not an accommodation endorser in the instant. case (upon which subject it is unnecessary for us to ex- press an opinion)—even if he could be regarded as. bound as if he were a maker of the note—by the very terms of the statute, the same rule, just stated, would be applicable.   8 C. J. pp. 205-6 and authorities cited, including *Ward* v. *Churn*, 18 Gratt. (59 Va.) 801, 98 Am. Dec. 749.   The latter case rests upon the common law rule, which is adopted by the statute.

See to same effect *Blair* v. *Bank*, 103 Va. 762, 769-772, 50 S. E. 262, and authorities cited.

[6] To meet this view of the law the position, among others, is taken in the brief for the plaintiff bank that "There is no evidence in the record from which a con- ditional delivery can fairly be inferred."   In view of the testimony of the defendant, Robertson, and other en- dorsers of the note, referred to, and some of it quoted, in the statement preceding this opinion, we do not con- sider such position tenable.

We, therefore, feel constrained to reverse the case and award a new trial.

As the pleadings will likely be different and the other questions presented by the assignments of error may not arise upon a new trial, we express no opinion upon them.

*Reversed and remanded for a new trial.*