# Staunton

## Jesse T. Meadows v. J. W. McClaugherty.

September 11, 1936.

Present, Campbell, C. J., and Hudgins, Gregory and Eggleston, JJ.

The opinion states the case.

*T. W. Messick,* for the plaintiff in error.

*Woods, Chitwood, Coxe & Rogers, Leonard G. Muse* and *Charles D. Fox, Jr.,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This writ of error was awarded Jesse T. Meadows, plaintiff in the lower court, to a judgment in favor of the defendant, J. W. McClaugherty.

The plaintiff originated this action by notice of motion in which it is alleged that defendant was indebted to plaintiff in the principal sum of $3,000, as evidenced by a certain non-negotiable promissory note bearing date September 7, 1934.

The defendant filed, in addition to the plea of the general issue, a special plea setting forth, among other things, that "the note sued on in this action was given upon the express terms and condition that it was to be held by the plaintiff and was not to be considered delivered or to become effective until the terms and conditions of the true agreement between the plaintiff and the defendant's brothers could be ascertained after the plaintiff should have sufficiently recovered so as to attend to his business affairs."

There was a trial by jury which resulted in a verdict for the defendant.

Plaintiff is a practicing attorney in the city of Roanoke.

For a number of years prior to his admission to the bar plaintiff was employed as a pharmacist by J. E. McClaugherty, a brother of the defendant. The most cordial relations existed between plaintiff and J. E. McClaugherty, and even after plaintiff began the practice of law he was employed as a half-time druggist.

The defendant was a man of large business interests in the city of Roanoke and for a period of years he conducted a successful grocery store. In the spring of the year 1933 defendant was committed to a private hospital for mental diseases, at Towson, Maryland, and remained in confinement for a period of eighteen months. A committee was appointed to take charge of his affairs and administer his estate. It appears from the evidence that the committee was antagonistic to the defendant and the allegation is made that immediately after its appointment the committee began to squander the estate. Although the defendant had four brothers and one sister, they were not permitted to communicate with him during the time of his confinement in the hospital. After a period of time the four brothers held a conference and decided that in order to conserve the estate of their brother, the defendant, it was essential that his release from the hospital be procured and the committee be discharged. As a result of this conclusion as shown by a written contract, they employed plaintiff and Beverley Worrell as their attorneys to effectuate this plan. According to the terms of the contract, plaintiff and Worrell were to receive the sum of $5,000, in the event they were successful in procuring defendant's release from the hospital and the removal of the committee. Plaintiff and Worrell were successful in their efforts. The defendant was released from the hospital, restored to his civil rights and returned to Roanoke where he took charge of his properties, which amounted to approximately $200,000.

According to the evidence introduced by plaintiff, upon the return of defendant to Roanoke he was advised of the contract of employment and requested to make a settlement. This effort upon the part of the plaintiff was unsuccessful.

On September 5, 1934, plaintiff sustained a serious injury

which necessitated his stay in a hospital for some time. On September 7, 1934, Worrell went to the home of defendant to interview him in regard to a settlement. It is undisputed that defendant gave Worrell a check for $2,000 and a note for $3,000, both being made payable to plaintiff. After the check and note were delivered to Worrell, he delivered to defendant the contract of employment, signed by the four brothers, and also executed and delivered to defendant the following receipt:

"Received from J. W. McClaugherty $2000.00 cash and a note for $3000, in full for services rendered for the removal of the said J. W. McClaugherty from the Sheppard Enoch Pratt Hospital, the removal of Mac E. McClaugherty as his Committee and the restoration of his property to date.

"JESSE T. MEADOWS,
"BEVERLEY R. WORRELL."

The proof shows that in the settlement between plaintiff and Worrell, the latter was paid the sum of $2,500, and the note of defendant delivered to plaintiff.

The contention of the defendant is (as shown by his proof in support of his plea), that by reason of the relationship which existed between plaintiff and his brothers, plaintiff was made a party to the contract of employment in order to assist him in his professional efforts, and that he was not to receive any compensation therefor; that the only compensation to be paid was the sum of $2,500 to Worrell; that the note in suit was delivered to Worrell on the express condition that it was to be retained by him until plaintiff recovered from his injury and that it was not to be considered delivered until the terms, as set forth in the plea, could be definitely ascertained.

The trial court, over the objection of the plaintiff, permitted the defendant to testify in full detail as to the alleged conditional delivery of the note to Worrell. This action of this court is challenged on the ground that the admission of this evidence violated the parol evidence rule and contradicted the terms of the instrument sued on.

There is no merit in this assignment of error.

Much has been said in the briefs in regard to the relevancy of the original contract of employment. In our opinion that instrument throws little light upon the controversy between the plaintiff and the defendant. The real issue in the case is: Was there a conditional delivery of the promissory note?

██ Whatever the decisions elsewhere, it has long been the rule in Virginia that a party whose name is signed to a written document has the unquestioned right to show that it was delivered upon conditions.

In *Solenberger* v. *Gilbert's Adm'r*, 86 Va. 778, 11 S. E. 789, it is said: "To establish the fact that there was no valid delivery of a note sued on, or a delivery thereof for a special purpose only, parol evidence is admissible. Where such evidence, in connection with written, shows that the purpose for which a note was delivered failed, there is no liability therefor on its maker."

In *Harris* v. *Sanford*, 148 Va. 181, 186, 138 S. E. 465, 54 A. L. R. 699, the doctrine stated in *Whitaker* v. *Lane*, 128 Va. 317, 104 S. E. 252, 261, 11 A. L. R. 1157, is re-affirmed. In that case Judge Burks said:

"It is difficult to understand, at this day, when the courts are striving to enforce the substantial rights of parties regardless of mere forms and technicalities, why one of these instruments may be delivered on a condition and the other not.

    *        *        *        *        *

"No good reason is perceived why the power to deliver does not carry with it the power to annex conditions to such delivery.

"In the present advanced state of civilization, we think we should say of sealed contracts what the Court of Errors of Connecticut said of unsealed contracts:

" 'Such a contract cannot become a binding obligation until it has been delivered. Its delivery may be absolute or conditional. If the latter, then it does not become a binding obligation until the condition upon which its delivery depends has been fulfilled. If the payee of a note has it in his possession, that fact would be *prima facie* evidence that it has been delivered; but it would be only *prima facie* evidence.

The fact could be shown to be otherwise and by parol evidence. Such parol evidence does not contradict the note or seek to vary its terms. It merely goes to its point of non-delivery. The note in its terms is precisely what both the maker and the payee intended it to be. No one desires to vary its terms or to contradict them.' [*McFarland* v. *Sikes*, 54 Conn. 250, 251, 252, 7A. 408, 1 Am. St. Rep. 111.]"

To the same effect is the holding in *Robertson* v. *Virginia National Bank*, 135 Va. 166, 115 S. E. 536; *Reliance Life Insurance Co.* v. *Gulley's Adm'x*, 134 Va. 468, 114 S. E. 551; *Crafts* v. *Broadway Bank*, 142 Va. 702, 128 S. E. 364.

The reason for the rule is to permit the party signing the instrument to show, not that there has been a different contract entered into, but that the contract invoked never had vitality as a contract.

In *Rhodes* v. *Walton*, 163 Va. 360, 372, 175 S. E. 865, 869, 176 S. E. 472, Justice Holt said: "Conditional delivery may be proven by evidence, parol or written, for their terms are not varied by showing that they were not delivered. No bond is binding until there has been a proper delivery. That may be as of its date or it may be deferred and made contingent upon some possibility as yet undetermined, but when delivery is once made the parol evidence rule applies, which is but to say that the date of the delivery does not control the construction of the bond, which must be according to its purport and tenor, and as it would have been had delivery been delayed.

" 'The rule which prohibits the admission of parol testimony to vary a deed or other writing is not infringed by the introduction of evidence relating to the delivery of the deed. Such evidence does not tend to contradict the deed or the recitals therein, but merely to show there has been no valid delivery. *Towner* v. *Lucas*, 13 Gratt. (54 Va.) 705.' *Nash* v. *Fugate*, 32 Gratt. (73 Va.) 595, 34 Am. Rep. 780."

The second assignment of error is that the court, over the objection of the plaintiff, permitted the defendant to give in detail a conversation he had with his brothers, in which he was told that they only agreed to pay Worrell

$2,500 and, in effect, that plaintiff was not to receive any compensation. Plaintiff objected to the admission of this evidence on two grounds: first, that it was hearsay evidence; and second, on the ground that it was an effort to corroborate the evidence of his brothers by proof of their former statements.

In overruling plaintiff's objection, the trial court gave this reason therefor:

"I think it is hearsay evidence to a certain extent, but under the statute, here was a man who was confined in a hospital and was not able to communicate with his lawyer until after the contract was made, and I am going to allow him to testify in regard to it."

It is thus demonstrated that the learned judge of the trial court recognized the time-honored rule relative to the admission of hearsay evidence, but because of the peculiar circumstances surrounding the defendant, sought to extend its application.

In Jones on Evidence (2d Ed.), section 1076, we read this apposite quotation from Chief Justice Marshall: "That this species of testimony *supposes* some *better testimony* which might be adduced in the particular case is not the sole ground of its exclusion. Its *intrinsic weakness*, its incompetency to satisfy the mind of the existence of the fact, and the *frauds* which might be practiced under its cover, combine to support the rule that hearsay is totally inadmissible." *Mima Queen* v. *Hepburn*, 7 Cranch (U. S.) 290, 3 L. Ed. 348.

As sympathetic as we may be with a fellow being who has suffered a mental derangement, those of us who occupy judicial positions should not permit our sympathies to blind us to the fact that the admission of hearsay evidence is a denial to the adverse litigant of the fundamental right of cross-examination.

The rule as to the inadmissibility of hearsay evidence seems to have been so well recognized that it has rarely been the subject of discussion by the Supreme Court of Appeals, and then only to a very limited extent. See *Vaughan's Adm'r* v. *Winckler's Ex'r*, 4 Munf. (18 Va.) 136; *French* v. *Chapman*,

88 Va. 317, 13 S. E. 479; *Norfolk & Western Ry. Co.* v. *Reeves*, 97 Va. 284, 33 S. E. 606.

We now come to a consideration of the second ground of objection, viz.: that the evidence of the defendant was an attempt to lay the foundation for the corroboration of defendant's brothers, who, when testifying, stated that no consideration was to be paid plaintiff for any services rendered.

The admissibility of corroborative evidence is fully discussed in *Crowson* v. *Swan*, 164 Va. 82, 92, 178 S. E. 898, and the holding in that case is determinative of the question here presented. In the *Crowson Case* it was held error to admit the evidence of the father that his daughter, an infant eleven years of age, prior to the trial of the case had made the same statement to him that she made as a witness for the defendant.

The action of the court in admitting the evidence of the defendant constitutes reversible error and necessitates a remand of the case for a new trial.

It is also assigned as error that the court erred in giving and refusing instructions.

In view of our conclusion that the pivotal question is whether or not there was a conditional delivery of the note in suit, it becomes unnecessary to discuss the instruction given in the case under review.

The judgment of the trial court is reversed and the case is remanded for a new trial.

*Reversed.*