# Richmond.

## A. C. CONWAY v. AMERICAN NATIONAL BANK OF DANVILLE.

### February 25, 1926.

1. COURTS—*Transfer of Case from one Side of Court to the Other—Inherent Power.*—Independent of statute the courts possessed no power to transfer a case from one side of the court to the other, or hear a law case with a chancery suit.

2. BILLS, NOTES AND CHECKS—*Endorser's Right to Have Maker's Property Sold—Remedy of Endorsers.*—In an action against an endorser upon a note if the endorser has any equitable right to have the maker's property sold and the proceeds applied to the note for the relief of the endorser, his remedy is by injunction and not by motion in the action at law.

3. TRIAL—*Transfer of Case from one Side of the Court to the Other—Section 6084 of the Code of 1919.*—Section 6084 of the Code of 1919 confers no power upon a court to transfer an action at law against the endorser on a note, to the equity side of the court on motion by the endorser in the suit at law. Section 6084 of the Code of 1919 was intended primarily for the benefit of plaintiffs and is mandatory upon the trial courts only to the extent of prohibiting them from dismissing a case "simply because it was brought on the wrong side of the court." That is, where the only question was as to the forum.

4. BILLS, NOTES AND CHECKS—*Action Against Endorser—Remedy of Endorser where he Desires to Subject the Estate of Maker and Compel Contribution by his Co-Endorser.*—The holder of a note, by virtue of the contract thereby established, can sue at law all the parties, makers and endorsers, or any one of them. If in an action against him an endorser desires to subject the estate of the maker of the note and compel contribution by his co-endorser, he should buy the note before suit and thus be substituted to all the rights of the holder.

5. PAROL EVIDENCE—*Rule Rigidly Adhered to.*—The parol evidence rule, the wisdom and beneficence of which has been demonstrated by experience, is very rigidly adhered to in this State. ·

6. BILLS, NOTES AND CHECKS—*Delivery—Conditional Delivery—Parol Evidence Rule.*—A person may manually deliver a negotiable instrument to another, on its face containing a binding obligation *in praesenti* of such person to such other, with a contemporaneous verbal agree-

ment that it shall not take effect until the happening of some specified event (as that others shall endorse it) and such condition is binding as between immediate parties, and as regards a remote party, other than a holder in due course. This does not violate the rule that a written instrument cannot be varied by a contemporaneous parol agreement, but is only evidence to show that the instrument never had vitality as a contract.

7.  BILLS, NOTES AND CHECKS—*Parol Evidence—Agreement by Payee that the Property of Maker Should be Exhausted Before Resort to Endorsers—Case at Bar.*—In the instant case, an action against an endorser of notes, the endorser sought to introduce parol evidence to the effect that the payee, by its agent, had agreed to subject the property of the maker conveyed in deeds of trust to secure the notes before resorting to the endorsers. The notes became binding contracts from the instant of their delivery and the effect of the parol agreement was plainly to contradict and vary the contract evidenced by the notes, which could not be done, and the court was right in excluding all evidence of that agreement.

8.  BILLS, NOTES AND CHECKS—*Parol Evidence—Agreement that Payment was not to be Demanded at Maturity.*—Where a negotiable note, or other unconditional promise to pay at a stipulated time, is regular upon its face, and is delivered to the payee as a valid and binding obligation for ever so short a time, no contemporaneous parol agreement can be set up to show that payment was not to be demanded at maturity, or until attached collateral had been exhausted, or upon the happening of any other subsequent event not mentioned in the note itself. All such efforts have as their end to change or vary the terms of the written contract.

9.  BILLS, NOTES AND CHECKS—*Attorney's Fee—Amount Specified in the Contract.*—In all jurisdictions where contracts for attorney's fees in excess of those allowed by statute are recognized as valid and enforceable, the courts have construed such contracts to be contracts of indemnity by virtue of which the holder of the note is entitled to recover such reasonable attorney's fee as may be incurred by him, not exceeding the amount specified in the contract. The amount specified in the contract, unless unreasonable or unconscionable, is the measure of recovery in the absence of other evidence.

10.  BILLS, NOTES AND CHECKS—*Attorney's Fee—Burden of Proof.*—In the instant case, an action against the endorser of notes, upon the failure of defendant to pay the notes and the placing them by the plaintiff in the hands of its attorney for collection, plaintiff was *prima facie* entitled to recover, according to the terms of the contract, ten per cent attorney's fee, provided it cost that amount. The burden was on the defendant to prove that plaintiff did not incur that amount

of expense or that the fee agreed upon in the notes was excessive or unreasonable.

11. BILLS, NOTES AND CHECKS—*Attorney's Fee—Questions of Law and Fact.*—Where there is no conflict of evidence as to the amount of the fee, the court should decide the same, but like any other fact, if the evidence as to its amount and reasonableness is conflicting, it should go to the jury.

12. BILLS, NOTES AND CHECKS—*Attorney's Fee—Questions of Law and Fact.*—Where defendant in an action on a note offered no evidence to prove that the attorney's fee stipulated for in the note was unreasonable, or that the plaintiff did not incur that amount of liability to its attorney, the judge should have fixed the fee himself, but the fact that he permitted the jury to fix it (which is a common practice with many of the trial judges), was a very harmless error.

Error to a judgment of the Corporation Court of the city of Danville, in a proceeding by motion for a judgment for money.   Judgment for plaintiff.   Defendant assigns error.

*Affirmed.*

The opinion states the case.

*A. M. Aiken* and *Meade & Meade*, for the plaintiff in error.

*Harris & Harvey*, for the defendant in error.

CHRISTIAN, J., delivered the opinion of the court.

This was an action by motion in the Corporation Court of Danville, to recover judgment against A. C. Conway as endorser on four notes of the Deep River Coal Company, Incorporated, all together amounting to $18,625.00, with interest thereon, and in addition thereto, ten per cent of the amount of said notes—attorney's fee—as provided in the notes.   The notes were executed by the Deep River Coal Company, payable to the American National Bank, by its president, A. C. Conway, and its secretary and treasurer, E. P.

Crider, and were all endorsed by A. C. Conway, E. P. Crider and A. M. Aiken.  At the time the loans were made to the coal company by the bank, the coal company executed two deeds of trust on all of its real and personal property in Chatham county, North Carolina, to secure the payment of its said notes.  Crider, in addition to his official position with the coal company, was also the vice-president of the American National Bank, with general control in the management of the plaintiff bank.

There was no controversy at the trial over the validity of the notes, or that they were past due and binding obligations upon the maker and each endorser, but Conway defended the action upon three grounds: (a) The action was prematurely brought; (b) it was brought in the wrong forum, and (c) that therefore no attorney's fee was collectible.  The court refused to sustain the motions of Conway setting up his defenses, and excluded from consideration of the jury all evidence tending to prove said defenses.  The jury brought in a verdict in favor of the plaintiff bank against Conway for $18,625.00 with interest from the dates when the notes were respectively due and payable, and ten per cent attorney's fee.  The defendant made a moton for a new trial which was overruled, and the court entered judgment in favor of the bank upon the verdict of the jury, whereupon Conway has brought the case by writ of error before us for review.

Conway had pending in the court when this case was called for trial a bill in equity to which all parties to the notes were defendants; the purpose thereof was to force the sale of the property of the Deep River Coal Company under the deeds of trust and apply the proceeds to the payment of the sums due the bank, pursuant to the parol condition, and agreement between

himself and Aiken, with Crider as representative of the bank, before the endorsers were called upon to pay anything upon the notes. He made a motion in writing that the instant case be transferred to the equity side of the court and be heard with the chancery suit, because all the rights and equities of the parties could therein be settled, and thus a number of suits be avoided. The plaintiff moved to dismiss this motion which the court did, and this constitutes the defendant's first assignment of error

[1, 2] Independent of statute the court possessed no power to transfer a case from one side of the court to the other, or hear a law case with a chancery suit. If Conway had any equitable right to have the maker's property sold and the proceeds applied to the notes for the relief of the endorsers, his remedy was by injunction, and not by motion in the suit at law.

[3] Nor does section 6084 of the Code of 1919 confer such power. It was intended primarily for the benefit of plaintiffs and is mandatory upon the trial courts only to the extent of prohibiting them from dismissing a case "simply because it was brought on the wrong side of the court." That is, where the only question was as to the forum. *French* v. *Stange Mining Co.*, 133 Va. 602, 114 S. E. 121.

[4] The holder of the notes, by virtue of the contract thereby established, could sue at law all the parties, makers and endorsers, or any one or more of them. If Conway desired to subject the estate of the maker of the notes and compel contribution by his co-endorsers, he should have paid the notes before suit, and he would have been substituted to all the rights of the bank. The court was right in dismissing the motion to transfer the law case to the chancery side of the court.

The right of Conway to relief and the extent thereof, as set forth in his bill in chancery, was included in his grounds of defense filed in this suit. It was based upon the parol agreement made by Crider, as representative of the bank, with the other parties to the notes, at the time of their execution, and as part of the contract, to the effect that if the notes were not paid according to their terms, the property of the maker conveyed in the deeds of trust to secure the notes should first be sold and applied to the payment of said notes. That is, the endorsers were not bound according to the terms of their endorsement, but only for the balance due after the property of the maker was exhausted.

Upon the trial the defendant offered to prove this parol agreement by several witnesses, whereupon the plaintiff objected to the introduction of any evidence to prove that agreement, as it contradicted and varied the written contract embodied in the notes, therefore was void because it violated the parol evidence rule. This objection was sustained by the court as to the testimony of all the witnesses as to this parol agreement, and the defendant reserved the point in several exceptions. One exception would have been sufficient to present that ruling to this court.

[5, 6, 7] The parol evidence rule, the wisdom and beneficence of which has been demonstrated by experience, is very rigidly adhered to in this State. The principle established in section 5578 of the Code, and the case of *Robertson* v. *Virginia National Bank*, 135 Va. 166, 115 S. E. 536, is not an exception to the parol evidence rule. It enunciates the rule that a person may manually deliver a negotiable instrument to another, on its face containing a binding obligation *in praesenti* of such person to such other, with a con-

temporaneous verbal agreement that it shall not take effect until the happening of some specified event (as that others shall endorse it) and such condition is binding as between immediate parties, and as regards a remote party, other than a holder in due course. This does not violate the rule that a written instrument cannot be varied by a contemporaneous parol agreement, but is only evidence to show that the instrument never had vitality as a contract. In the instant case the notes became binding contracts from the instant of their delivery, and the effect of the parol agreement was plainly to contradict and vary the contract evidenced by the notes, which could not be done and the court was right in excluding all evidence of that agreement.

[8] But this is no longer an open question in Virginia. In the case of *Crafts* v. *Broadway National Bank*, 142 Va. (Spl. Ct. of App.) 702, 128 S. E. 364, which is very similar to the instant case, decided at its May session 1925, Judge McLemore, in an able opinion, makes plain the difference between the delivery of a note upon parol condition that it shall have no vitality until the happening of a certain event, and a note delivered to take effect immediately, but to be varied by a subsequent condition. The law as established by that decision is where a negotiable note, or other unconditional promise to pay at a stipulated time, is regular upon its face, and is delivered to the payee as a valid and binding obligation for ever so short a time, no contemporaneous parol agreement can be set up to show that payment was not to be demanded at maturity, or until attached collateral had been exhausted, or upon the happening of any other subsequent event not mentioned in the note itself. All such efforts have as their end to change or vary the terms of the written contract.

The exclusion of all evidence of the parol agreement left the notes, that contained in each the provision whereby the parties agreed "that if this note is collected by an attorney by suit or otherwise, to pay in addition to the amount hereon ten per cent of said amount as attorney's fees," as the only proof in the case. Whereupon the court instructed the jury that if they believed from the evidence Conway endorsed the notes, they must find for the plaintiff and fix its damages at $20,487.50 which is the amount of the notes sued on, plus ten per cent attorney's fees, and interest from the due dates of the respective notes. This instruction was the subject of the defendant's sixth certificate of exception, but he assigns no error in the instruction except that the plaintiff had not proven that it had incurred any attorney's fee nor what amount of attorney's fee it was entitled to recover against the defendant.

[9] In all jurisdictions where contracts for attorney's fees in excess of those allowed by statute are recognized as valid and enforceable, the courts have construed such contracts to be contracts of indemnity by virtue of which the holder of the note is entitled to recover such reasonable attorney's fee as may be incurred by him, not exceeding the amount specified in the contract. The amount specified in the contract, unless unreasonable or unconscionable, is the measure of recovery in the absence of other evidence. *Colley* v. *Summers Parrott Company*, 119 Va. 439-442, 89 S. E. 906, Ann. Cas. 1917D, 375.

[10] Upon the failure of the defendant to pay the notes, and the plaintiff had to place them in the hands of its attorney for collection, it was *prima facie* entitled to recover according to the terms thereof ten per cent attorney's fee provided it cost that amount, but the

burden was on the defendant to prove that it did not incur that amount of expense or that the fee agreed upon in the notes was excessive or unreasonable.

[11, 12] Where there is no conflict of evidence as to the amount of the fee, the court should decide the same, but like any other fact, if the evidence as to its amount and reasonableness is conflicting it should go to the jury. The defendant offered no evidence to prove the fee unreasonable or that the plaintiff did not incur that amount of liability to its attorney. Therefore, the learned judge should have fixed it himself, but the fact that he permitted the jury to fix it (which is a common practice with many of the trial judges), was a very harmless error, that is noticed only to call attention of the bench to the proper practice. *Triplett* v. *Bank*, 121 Va. 189, 92 S. E. 897; *Cox* v. *Hagan*, 125 Va. 656, 100 S. E. 666-673.

There are no errors in the rulings of the trial court, therefore its judgment must be affirmed.

*Affirmed.*