Wytheville.

JOSEPH CLARK AND LYDIA A. CLARK v. J. H. MILLER.

June 16, 1927.

1. NEGOTIABLE INSTRUMENTS—*Actions—Instructions—Verdict for Plaintiff—Case at Bar.*—In the instant case, an action on negotiable notes, the court instructed the jury that if they believed from the evidence that the defendants executed the notes sued on and had not paid them they should find for the plaintiff.

   *Held:* That the instruction correctly stated the law.

2. NEGOTIABLE INSTRUMENTS—*Actions—Instructions—Value—Case at Bar.*—In an action on negotiable notes, the court instructed the jury that every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration and every person whose signature appears thereon, to have become a party thereto for value.

   *Held:* That the instruction correctly stated the law.

3. INSTRUCTIONS—*Evidence to Support Instruction—Evidence Stricken Out.*—In the instant case, the court having stricken out the defendants' evidence, there was no evidence upon which to base the instructions tendered by them and it was not, in view of the state of the record, error to refuse to give such instructions.

4. APPEAL AND ERROR—*Harmless Error—Striking Out Special Pleas—Same Facts Proved under General Issue—Case at Bar.*—In the instant case, an action on negotiable notes, defendants pleaded the general issue and special pleas charging fraud in the procurement of the notes. If the defendants' special pleas were sufficiently specific in their allegations of fraud, which the court did not decide, and were improperly rejected, the error was harmless, inasmuch as the court allowed defendants to prove under the general issue all that they could have proven under the special pleas.

5. NEGOTIABLE INSTRUMENTS—*Fraud—Section 5617 of the Code of 1919—Case at Bar.*—In the instant case, an action on negotiable notes, testimony of the defendants did not warrant the conclusion that the notes in question were delivered conditionally, but from their testimony it appeared that there was an absolute delivery to plaintiff with a promise by plaintiff, made before the notes were signed, that defendants would not have to pay the notes.

   *Held:* That section 5617 of the Code of 1919, providing that the title

of a person who negotiates an instrument is defective when he obtained the instrument or any signature thereto by fraud, was not applicable to the facts of the instant case.

6. PAROL EVIDENCE—*To show that Written Contract Never Became Operative—To Take Effect Conditionally.*—Parol evidence is admissible between the original parties to show that a written contract never became operative, or was to take effect conditionally and that the condition has not arisen.

7. PAROL EVIDENCE—*Negotiable Instrument—Parol Evidence to Show that Notes were Never to be Paid—Case at Bar.*—But where, as in the instant case, a contract had been delivered and is in force, parol evidence which tends to contradict or vary the terms of a written instrument is inadmissible and cannot be heard. Thus defendants in the instant case, an action on negotiable notes, had no right to show that there was an oral agreement that they were not to pay the notes. Such evidence tended to destroy the legal effect of the notes and the court did not err in striking out all of defendants' evidence which had such tendency.

8. NEGOTIABLE INSTRUMENTS—*Fraud—Promise by Payee that Maker Would Not have to Pay Notes—Case at Bar.*—In the instant case, an action on negotiable notes, defendants alleged that plaintiff had orally promised before the notes were signed that defendants would not have to pay the notes. The only evidence of the alleged promise was the testimony of defendants.

   *Held:* That the record failed to disclose any legal proof of fraud as alleged against the plaintiff.

9. NEGOTIABLE INSTRUMENTS—*Action on Notes—Defense that Notes were Executed to Defeat the Right of Another under Promise that Notes Would Not be Enforced—Nemo Allegans Suam Turpitudinem Est Audiendus.*—The instant case was an action on negotiable notes. The notes were given by defendants to plaintiff as part of the purchase price of a farm conveyed by plaintiff to the defendants. Defendants asserted that the sale was a fictitious one, in order to allow plaintiff to get rid of the tenant of the farm; and that plaintiff promised defendants before the notes were signed that they would not have to pay the notes.

   *Held:* That defendants' plea was not good in law nor in equity, as it falls within the maxim of the common law *"nemo allegans suam turpitudinem est audiendus."*

Error to a judgment of the Circuit Court of Henrico county in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendants assign error.

*Affirmed.*

The opinion states the case.

*Wendenburg & Haddon, W. W. Beverly* and *Julien Gunn,* for the plaintiff in error.

*George E. Haw,* for the defendant in error.

WEST, J., delivered the opinion of the court.

J. H. Miller, hereafter called plaintiff, brought action against Joseph Clark and Lydia Clark, his wife, hereafter called defendants, and recovered a judgment for $6,761.92 with interest from October 30, 1924, till paid, and also for an attorney's fee of $676.19. That judgment is before us for review.

The plaintiff sold and conveyed to the defendants and delivered to them the deed for a tract of land in New Kent county, Virginia, containing 564 acres, for the sum of $8,750, the consideration stated in the deed being $10,000. The defendants executed, simultaneously, a deed of trust conveying the property to Geo. E. Haw, trustee, to secure the payment of their two notes, given for the purchase price, dated October 10, 1922, and payable to bearer, one for $4,000 one year after date, and one for $4,750 two years after date, each containing a clause binding the makers "to pay all expenses incurred in collecting the same, including ten per cent attorney's fees."

The notes were delivered to the plaintiff and deposited by him in the American National Bank of Richmond, Virginia, where he used them, from time to time, as collateral security for money borrowed. Neither of the notes was paid at maturity, and the trustee, being directed so to do, sold the property pursuant to the terms of the deed of trust, and, after paying the costs

of the sale, credited the net amount realized therefrom on the two notes, leaving a balance due of $6,761.92.

The action was instituted to recover the balance due upon the notes, including the attorney's fee.

The defendants pled the general issue and filed grounds of defense as follows:  (1) Failure of consideration;  (2) that execution of the notes was procured through fraud and misrepresentation.  At the trial defendants filed two special pleas, charging fraud in the procurement of the notes, which, on motion of the plaintiff, were rejected by the court.

The plaintiff introduced in evidence the two notes above mentioned, the note for $4,000.00 showing a credit endorsed thereon of $1,988.08, being the balance of the proceeds of the sale of the farm under the deed of trust to Geo. E. Haw, trustee, and rested his case. The defendants then introduced evidence to the following effect:  Plaintiff had rented the New Kent farm to one Belvin and desired to terminate the lease, and could do so only by deeding the farm away.  He wanted to deed it to the defendants for two or three years when the plaintiff would take it back.  Defendants hesitated to accept the deed and plaintiff told them it would not cost them a cent.  When they signed the notes he told them he would take care of the notes at maturity, and that they would never be required to pay them. Defendants took possession of the farm and put one Millhiser in charge as their tenant.  Belvin got off and sued plaintiff for breaching a contract under which he was to manufacture certain timber on the farm into lumber, and recovered damages.  Defendants cut some wood and lumber on the farm, plaintiff telling them, as they say, it would look better and keep people from thinking it was a fake sale.  Defendant, Joseph Clark, says the entire transaction was a fake and was entered

into by defendants as a favor to the plaintiff to get his tenant, Belvin, off the farm. Defendants never paid any portion of the purchase price.

The plaintiff, in rebuttal, contradicted the testimony of the defendants and testified that the sale of the farm was made to the Clarks at their solicitation, in good faith, without condition, and was free from fraud; and proved by other witnesses that Clark promised to pay the notes as soon as he could collect some money for property he had sold at Windsor Shades; and that Clark testified in the suit of *Belvin* v. *Miller* that he held a deed for the farm, had bought it and settled for it at $10,000.00.

At the conclusion of the evidence, the court struck out the defendants' evidence, but the jury returned a verdict in their favor, which, on motion of the plaintiff, was set aside and the judgment complained of was entered for the plaintiff.

There are six assignments of error, relating to the court's action in rejecting the defendants' two special pleas, in striking out the defendants' evidence, in holding that plaintiff's title to the notes sued on was valid, and that the contract was free from fraud, in giving plaintiff's instructions A and B and refusing instructions Nos. 1, 2, 3, 4 and 5 offered by the defendants, in setting aside the verdict and entering judgment for the plaintiff, and requiring the defendants to pay a ten per cent attorney's fee.

[1] Instructions A and B read as follows:

"A." "The court instructs the jury that if they believe from the evidence that the defendants executed the notes sued on and have not paid the same that they shall find for the plaintiff in the sum of $6,761.92 with interest thereon from October 30, 1924, at the rate of six per cent and a ten per cent attorney's fee

on the said $6,761.92, provided for in the face of said notes."

[2] "B." "The court instructs the jury that every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration and every person whose signature appears thereon to have become a party thereto for value."

[3] These instructions correctly state the law. The court having stricken out the defendants' evidence, there was no evidence upon which to base the instructions tendered by them and it was not, in view of the state of the record, error to refuse to give such instructions.

[4] If the defendants' special pleas were sufficiently specific in their allegations of fraud, which we do not decide, and were improperly rejected, the error was harmless, inasmuch as the court allowed defendants to prove under the general issue all that they could have proven under the special pleas. *Merriman* v. *Cover*, 104 Va. 438, 51 S. E. 817.

[5] Defendants contend that the notes were delivered for a specific purpose, upon the condition that they would be returned to the defendants as soon as they reconveyed the farm to the plaintiff, upon his request, which would be in one or two years. To sustain this position they rely upon Code of Virginia, section 5617, which is as follows:

"The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument or any signature thereto by fraud, duress, or force and fear or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith or under such circumstances as amount to a fraud."

We do not think the statute applies to the facts in

the instant case. The testimony of the defendants does not warrant the conclusion that the notes were delivered conditionally, but that there was an absolute delivery with the promise of Miller, made before the notes were signed, that they would not have to pay the notes.

Joseph Clark testified: "So I agreed to it and asked how about the notes. He said: 'I have to make a deed of trust to secure myself in case you die.' I said, 'How about these notes?' He said: 'Don't you pay any attention to these notes. I will take care of them. It shan't cost you a cent.' So I agreed to it and we fixed the papers up and I got a deed to it."

Mrs. Clark testified: "I said, 'I don't like the idea of signing these notes.' He said: 'This is just a matter of business in case you and Joe die; your heirs and administrators could cheat me out of everything.' So I signed the notes. He said: 'If the bank sends you any notice, don't pay any attention to it, you just hold this deed—it is just a matter of business.' The deed of trust wouldn't be any good unless he had notes to prove something was owing."

It is contended that the notes were delivered, and the defendants' evidence shows clearly that they were intended to be and were a binding contract between the parties. The Clarks accepted the deed and had it and the trust deed recorded. Miller took the notes and used them as collateral security with his bank. Clark told the bank he regarded the land as good security for the notes and promised to pay the notes as soon as he could collect some money for other property which he had sold.

[6, 7] Parol evidence is admissible between the original parties to show that a written contract never became operative, or was to take effect conditionally

and that the condition has not arisen. But where, as in the instant case, the contract has been delivered and is in force, parol evidence which tends to contradict or vary the terms of the written instrument is inadmissible and cannot be heard. Defendants had no right to show that there was an oral agreement that they were not to pay the notes. Such evidence tended to destroy the legal effect of the notes and the court did not err in striking out all of defendants' evidence which had such tendency.

[8] A careful examination of the record fails to disclose any legal proof of fraud, as alleged against the plaintiff.

Allen, P., speaking for the court in *Towner* v. *Lucas,* 13 Gratt. (54 Va.) 716, says: "It is reasoning in a circle to argue that fraud is made out when it is shown by oral testimony that the obligee, contemporaneously with the execution of a bond, promised not to enforce it. Such a principle would nullify the rule; for conceding that such an agreement is proved, or any other contradicting the written instrument, the party seeking to enforce the written agreement according to its terms would always be guilty of fraud. The true question is: Was there any such agreement? And this can only be established by legitimate testimony. For reasons founded in wisdom and to prevent frauds and perjuries, the rule of the common law excludes such oral testimony of the alleged agreement; and as it cannot be proved by legal evidence, the agreement itself, in legal contemplation, cannot be regarded as existing in fact. Neither a court of law or of equity can act upon the hypothesis of fraud where there is no legal proof of it. Thus, although for the reasons given, parol evidence that a person who signed as principal was in truth an agent, is admissible when offered for the purpose of

charging the principal with the contract, such evidence can never be received for the purpose of exonerating an agent who has entered into a written contract in which he appears as principal; for such evidence would alter the written contract."

And on page 724: "The case cannot be brought under any head of fraud, except by proof of the contemporaneous agreement inconsistent with the written instrument; and, for the reasons already given, no proof of that kind can legitimately be received. No such agreement in legal contemplation exists, and no fraud can be imputed to the obligee for insisting on the terms of his bond. If it be averred that, although a note is on its face payable on demand and unconditionally, there was a contemporaneous oral agreement that the time for the payment should be postponed, or required only upon the happening of a certain contingency, parol evidence of such an agreement is inadmissible. *Moseley* v. *Hanford*, 21 Eng. C. L. R. 156; *Free* v. *Hawkins*, 8 Taunt. R. 92; *Hanson's Trustee* v. *Stetson*, 5 Pick. [Mass.] R. 506; *Spring* v. *Lovett*, 11 Pick. [Mass.] R. 417; *Watson* v. *Hurt*, 6 Gratt. (47 Va.) 633. Yet it might be argued with the same force that this oral agreement may have induced the party to sign the note, and that it is a gross fraud to attempt to enforce it according to its terms. And so it would be if the existence of the agreement could be judicially established. But there being no legal proof of it, there is nothing of which fraud can be affirmed. Matters in writing, instead of finally importing the certain truth and agreement of the parties, would be a snare and delusion. The party relying on an instrument in writing as the final result in which all previous negotiations have centered, would be met and 'controlled by an averment to be proved by the uncertain testimony of slippery memory.' "

In *Whitaker* v. *Lane*, 128 Va. 317, 104 S. E. 252, 11 A. L. R. 1157, Judge Burks, speaking for the court, states the law thus: "In a controversy between the immediate parties to a written instrument, the parol evidence rule does not forbid the use of parol evidence to establish any fact that does not vary, alter or contradict the terms of the instrument, or the legal effect of the terms used. These are concluded by the writing, and the parties are estopped to deny them. Thus it is not permissible for a party who has signed and delivered a valid written instrument to show that there was an agreement that he was not to be bound at all, or that suit was never to be brought on it, or that it was to be paid only out of a particular fund, or that a blank endorsement was without recourse, or that it was to be paid at a different time from that stated, or that an endorser should be liable only as an assignor, or that a promise to pay money was to be discharged in some other manner, or any other similar defense. For such defenses vary the legal effect of the language used in the instrument. *Towner* v. *Lucas*, 13 Gratt. (54 Va.) 705; *Woodward* v. *Foster*, 18 Gratt. (59 Va.) 200; *Lynch* v. *O'Brien*, 115 Va. 350, 79 S. E. 389; *Metropolitan Life Ins. Co.* v. *Hall*, 104 Va. 575, 52 S. E. 345; *Citizens' Natl. Bank* v. *Walton*, 96 Va. 435, 31 S. E. 890; *Rector* v. *Hancock*, 127 Va. 101, 102 S. E. 663; *Brown* v. *Spofford*, 95 U. S. 474, 24 L. Ed. 508; *Martin* v. *Cole*, 104 U. S. 30, 26 L. Ed. 647."

In *Continental Trust Co.* v. *Witt*, 139 Va. 467-8, 124 S. E. 265, 268, the court, speaking through Judge Sims, says: "But where the instrument is in fact delivered as a valid and binding obligation, for any moment of time, and it is sought by parol evidence to show an agreement by the obligee (even though the alleged agreement is said to have been made at or before the

delivery of the instrument) to release the obligor from his liability under the terms of the instrument, or to limit such liability, upon the happening of any subsequent event, or under any subsequent circumstances whatsoever, the parol evidence rule is applicable and the evidence is inadmissible. And the same is true in an action by an indorsee with knowledge of such an agreement. See, in addition to the cases above cited, 1 Joyce's Defenses to Commercial Paper (2d ed.), section 519, page 714; Chamberlayne on Ev., section 3553; 2 Elliott on Contracts, 1620, 1621, 1625. In such cases, where a negotiable instrument is involved, 'the property in the instrument,' within the meaning of section 5578 of the Code, is passed by the delivery of the instrument, and it may not be shown by parol evidence, even as between the immediate parties, that the delivery of the instrument was conditional, or for a special purpose only, other than what appears from the terms of the instrument itself."

Judge McLemore, speaking for the Special Court, in *Crafts* v. *Broadway National Bank*, 142 Va. 706–7, 128 S. E. 364, 366, uses this language: "It will be observed that the note sued on was regular on its face and complete in its terms. It was admittedly delivered to the bank for discount and by the bank so handled. The defense offered in opposition to its collection is based upon an agreement alleged to have been entered into between the president of the bank and Crafts, whereby the note, which was an unconditional promise to pay at maturity, was in fact only an evidence of debt, with the right to demand payment indefinitely postponed.

"This is a clear case of attempting, by a contemporaneous oral agreement, to alter and change the terms of a perfectly plain, clear and explicit written

contract. We are of the opinion that whatever may be the holdings of some of the courts of this country, the question is not an open one in this jurisdiction."

[9] In the case of *Harris* v. *Harris*, 23 Gratt. (64 Va.) 737, 769, as in the instant case, the defendant alleged that he and the plaintiff had entered into the contract for the purpose of defeating the right of a third party. The court, in disposing of his defense, said: "But it is insisted that the plea is a good plea under the statute, because it alleges 'such matter existing before the execution of the bonds as would entitle him to relief in equity against the obligation of these contracts.' Can this proposition be maintained upon principle or authority? The able argument of the learned counsel for the appellee on this point is conclusive and un-answerable, and the authorities with one voice sustain his views of this branch of the case.

"Suppose the defendant had filed his bill in equity containing the same allegations which this plea sets up; and asking the court to interfere and decree a cancellation and delivery up of these bonds; would he be entertained for a moment in that forum? He would have to come before that court with the aver-ment in substance that he voluntarily entered into these obligations for the express purpose of defeating certain claimants who had sued him for damages; that he had antedated these bonds, which he executed and delivered to his father for the purpose of giving him a priority over these claimants; and that no other consideration or inducement existed for giving them. His own statement would close the doors of a court of equity against him. He would in effect be asking the court to interfere, and by its decree relieve him from the consequences of his own fraud. This a court of

equity will never do. The authorities speak with one voice on this subject. Even the cases relied upon by the learned counsel for the appellant settle the doctrine (which he relies upon with much ingenuity and force to sustain another branch of his argument), that courts of equity will not relieve parties from the consequences of their own fraud (see 5 Rob. Prac., page 542–543, where numerous cases are cited), but will leave them where they have placed themselves by their fraudulent contracts."

On page 754: "I think, therefore, it is clear that if the defendant had come into a court of equity, making the same allegations in his bill as he has made in his plea, his own statement of his case would have effectually closed against him the doors of a court of equity. And it follows that he has not alleged 'such matter existing before the execution' of the bonds sued upon 'as would entitle him to relief in equity against the obligation of these contracts.' I am, therefore, clearly of opinion that the plea tendered is not a good plea under the statute.

"Is it a good plea at common law? I think not. I think this is emphatically one of the class of cases in which the maxim of the common law, '*nemo allegans suam turpitudinem est audiendus*,' applies with full force." For a discussion of the maxim "*nemo allegans*," etc., see *Cardwell* v. *Kelly*, 95 Va. 570, 28 S. E. 953, 40 L. R. A. 240.

For the foregoing reasons, we are of the opinion that the court did not err in striking out the evidence for the defendants. This done, the jury could return no proper verdict except for the plaintiff. The court was right in setting aside the verdict and entering judgment in favor of the plaintiff.

Since, under the evidence, there could be no recovery by the defendants, they were not prejudiced by any ruling of the court in the case.

The judgment will be affirmed.

*Affirmed.*