# Richmond

## T. H. NOTTINGHAM AND S. T. NOTTINGHAM V. FARMERS & MERCHANTS TRUST BANK.

April 28, 1938.

Present, Campbell, C. J., and Holt, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Quinton G. Nottingham, W. A. Dickinson* and *James E. Heath,* for the plaintiffs in error.

*Mears & Mears,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

In the year 1932, and for some time prior thereto, there were operating in Northampton county, Virginia, three banks known as The Cheriton Banking Company, Incorporated (hereinafter called the Cheriton Bank), The Townsend Banking Company, Incorporated, and the Farmers & Merchants Trust Bank. In December of that year these three banks, with the approval and under the supervision of the State Bureau of Insurance and Banking, determined to merge into one institution to be known as the Farmers & Merchants Trust Bank.

Shortly before this an examination of the books of the Cheriton Bank had convinced the Bureau of Insurance and

Banking that its assets had depreciated in value to such an extent as to be approximately $32,000 short of the amount necessary to meet its liabilities, other than its capital stock obligations. Accordingly, the head of the Bureau notified the officers and directors of the Cheriton Bank that the institution would not be allowed to come into the merger unless its directors, or some of them, entered into a bond in the principal sum of $32,000 to cover such deficiency in its assets.

A meeting of the board of directors of the Cheriton Bank was held on December 20, 1932, at which the proposed merger agreement and necessary bond were discussed. There were present at this meeting T. H. Nottingham, S. T. Nottingham (both of whom had been directors for a number of years), and all of the other directors except R. Fulton Powell. Without objection it was unanimously resolved that the agreement and the required bond should be executed.

Accordingly, on December 23, 1932, there was executed the following instrument, which is the subject of this suit:

"KNOW ALL MEN BY THESE PRESENTS THAT WE, T. W. Jones, S. T. Nottingham, J. W. Nottingham, C. R. Sterling, J. Gates Goode, W. D. Nottingham, E. V. Downes, M. S. Wilson, T. Wallace Jones and T. H. Nottingham, the undersigned, in consideration of the sum of Ten Dollars ($10.00) paid to us, at and before the signing, ensealing and delivery of these presents, the receipt of which is hereby acknowledged, are held and firmly bound unto

THE CHERITON BANKING COMPANY, INCORPORATED,
ITS SUCCESSORS OR ASSIGNS
in the sum of
THIRTY-TWO THOUSAND ($32,000.00) DOLLARS

for the payment of which well and truly to be made, we and each of us bind ourselves, jointly and severally, our heirs, executors, administrators and assigns firmly by these presents, and we do severally hereby waive the benefit of

our homestead exemption as to this debt, obligation or contract.

"THE CONDITION OF THIS OBLIGATION IS SUCH THAT; whereas upon an examination of the books of The Cheriton Banking Company, Incorporated, by M. E. Bristow, Commissioner of Insurance and Banking, there was ascertained a depreciation in the value of the assets of The Cheriton Banking Company, Incorporated, in the sum of Thirty-two Thousand ($32,000.00) Dollars, more or less, and; whereas this Bond is given in the nature of a reserve by which any loss or damage to the assets of said Bank may be reimbursed or made good during a period of two (2) years from the date of this bond, and; whereas said bond shall not be surrendered or cancelled nor shall the makers thereof be relieved of their liability thereunder unless and until the whole of said depreciation is made good or eliminated, and; whereas the obligors herein being the officers and directors of The Cheriton Banking Company, Incorporated, and as such charged with the administration of the business of the said Bank and the protection of its interests and liabilities, are desirous, so far as their financial ability will permit, of assuring and guaranteeing the assets of said Bank, and; whereas as such we are familiar with all the terms and conditions of the joint agreement to merge Farmers & Merchants Trust Bank, The Townsend Banking Company, Incorporated, and The Cheriton Banking Company, Incorporated, and; whereas we are willing to guarantee the assets of The Cheriton Banking Company, Incorporated, to the extent of the amount of this obligation:

"NOW, THEREFORE, if the assets of any nature and kind whatsoever of The Cheriton Banking Company, Incorporated, shall be sufficient to take care of, pay and fully discharge all the liabilities of The Cheriton Banking Company, Incorporated, under and by virtue of the joint agreement or merger aforesaid and appraisals made thereunder, then this obligation is to be void; otherwise to remain in force and virtue.

"And the said obligors herein hereby expressly agree that in case of a breach of the foregoing condition, that the said bank its successors or assigns shall have a joint or separate right of action hereunder, at its election.

"WITNESS the following signatures and seals at Cheriton, Virginia, this 23rd day of December, 1932.

| | |
|---|---|
| T. W. JONES | (SEAL) |
| M. S. WILSON | (SEAL) |
| T. WALLACE JONES | (SEAL) |
| THOS. H. NOTTINGHAM | (SEAL) |
| J. GATES GOODE | (SEAL) |
| W. D. NOTTINGHAM | (SEAL) |
| S. T. NOTTINGHAM | (SEAL) |
| C. R. STERLING | (SEAL) |
| J. W. NOTTINGHAM | (SEAL) |
| E. V. DOWNES | (SEAL)" |

On December 23, 1932, the necessary formal resolutions were passed by the board of directors of the Cheriton Bank authorizing the execution of the merger agreement. There were present at this meeting the same ten directors who had executed the bond. The remaining director, R. Fulton Powell, was not present. Subsequently, on January 10, 1933, a meeting of the stockholders formally approved the merger agreement and ratified the action of the board of directors in authorizing its execution by the necessary officers. Both T. H. Nottingham and S. T. Nottingham were present at this meeting. Each of the directors of the Cheriton Bank, including T. H. Nottingham and S. T. Nottingham, then executed the merger agreement.

All of the statutory requirements having been complied with, the merger became effective on January 13, 1933, and the bond was delivered to the merged institution.

Under the terms of the merger agreement the liabilities of the Cheriton Bank, exclusive of its liabilities to its stockholders by virtue of stock ownership, were assumed by the merged corporation. The Cheriton Bank, in turn, agreed

to deliver to the merged bank a sufficient amount of assets or cash to equal the amount of the liabilities thus assumed.

It is undisputed that the total amount of assets delivered by the Cheriton Bank to the merged institution, and appraised in the manner required by the merger agreement, was more than $32,000 short of the total amount of liabilities of the Cheriton Bank assumed by the merged institution. Thereupon demand was made by the merged bank upon those parties who had signed the $32,000 bond for payment thereof. Seven of these parties paid the total amount of $25,200. To recover the balance of $6,800 the Farmers & Merchants Trust Bank (hereinafter called the plaintiff) instituted the present suit against T. H. Nottingham and S. T. Nottingham (hereinafter called the defendants), who had declined to pay anything on account of the bond.

After issue had been joined there was a trial by a jury, which resulted in a verdict of $6,800 against the defendants. This writ of error has been granted to review the judgment entered upon that verdict.

The first assignment of error is that the trial court erred in overruling a demurrer to the notice of motion for judgment, and in failing to set aside the verdict of the jury, because, it is said, "The only condition of this bond was that the assets of the Cheriton Bank should be sufficient to discharge its liabilities *under and by virtue of the merger agreement;*" that the only obligation imposed upon the Cheriton Bank by the merger agreement was to deliver all of its assets to the merged bank; and that when this was done the condition of the bond was satisfied.

But we think the merger agreement placed upon the Cheriton Bank the obligation to do more than merely deliver its assets to the merged institution. The merger agreement, dealing with the affairs of the three institutions, is necessarily lengthy and somewhat complicated. Under its terms, as we have already seen, the merged institution assumed certain liabilities of the Cheriton Bank, and in consideration thereof the latter bank delivered to the merged

institution all of its assets. These assets were to be appraised and classified by the representatives of the merged institution as "lot A" and "lot B," respectively.

The agreement stated that the assets in "lot A" "shall consist of enough of the assets of The Cheriton Banking Company, Incorporated, to equal its public liabilities" as of the close of business on December 22, 1932. The term "public liabilities" was defined as "all liabilities of every kind and description * * * other than liabilities to stockholders by virtue of stock ownership."

All of the remaining assets of the Cheriton Bank, classified as "lot B," were to be held by the merged institution as collateral security to cover any deficiency which might develop between the assumed liabilties of the Cheriton Bank and the total of its "lot A" assets. If the total of the "lot A" assets and the "lot B" assets was insufficient to cover the assumed liabilities of the Cheriton Bank, the latter was to pay to the merged institution such insufficiency in cash.

In short, the merger agreement placed upon the Cheriton Bank the obligation to deliver to the merged institution sufficient assets and cash to equal the liabilities of the Cheriton Bank, which had been assumed by the merged institution.

The notice of motion alleges, and the undisputed evidence shows, that the assets which the Cheriton Bank delivered to the merged bank fell short by more than $32,000 of equaling the assumed liabilities of the Cheriton Bank. Clearly, then, the merged institution was entitled to recover of the Cheriton Bank such deficiency in cash, and this established a liability on the bond for the full penalty thereof.

The plaintiffs in error next complain of the action of the trial court in striking out evidence which they undertook to introduce to the effect that at the time they signed the bond it was understood and agreed between them and the cashier of the Cheriton Bank that the bond was not to become effective unless and until all of the directors had

signed it, and that this agreement was violated in that R. Fulton Powell, one of the directors, did not sign.

It is well settled that a bond or note apparently complete on its face may be delivered subject to the condition that it is not to become effective until others have signed or endorsed it. Proof of such condition does not violate the parol evidence rule since it does not vary the terms of the written instrument, but shows that the contract had no legal existence or was never, in fact, delivered. *Nash* v. *Fugate*, 32 Gratt. (73 Va.) 595, 34 Am. Rep. 780; *Blair* v. *Security Bank*, 103 Va. 762, 50 S. E. 262; *Whitaker* v. *Lane*, 128 Va. 317, 104 S. E. 252, 11 A. L. R. 1157; *Robertson* v. *Virginia Nat. Bank*, 135 Va. 166, 115 S. E. 536; *Crafts* v. *Broadway Nat. Bank*, 142 Va. 702, 128 S. E. 364; *Conway* v. *American Nat. Bank*, 146 Va. 357, 131 S. E. 803.

Whatever may have been the understanding when the necessity for giving a bond of this character first arose, we think the undisputed documentary evidence and admitted circumstances conclusively show that these defendants knew that Powell was not to sign the particular bond which is the subject of this suit.

On December 20, 1932, both of these defendants signed a bond of the same tenor and effect as that here involved, except that the name of R. Fulton Powell was inserted in the caption as one of the directors. After all of the other directors had signed this bond, Powell refused to sign it. Thereupon that bond was cancelled and a new bond was drawn omitting Powell's name from the caption. This latter bond, which is the subject of this suit, both of the defendants signed. The typewritten original is before us. Not only is Powell's name omitted from the caption as one who would sign it, but there is on the instrument no scroll or seal for any other signature.

In view of these circumstances how, then, can the defendants claim that they understood Powell was to sign this bond?

Moreover, these defendants participated in the directors' and stockholders' meetings approving the merger, and as

directors of the Cheriton Bank signed the merger agreement, the consummation of which they knew was dependent upon the giving of this bond. Not until this suit was brought, nearly three years later, did they ever disclose to the Farmers & Merchants Trust Bank, or claim to anyone, that they had signed the bond upon the condition which they now assert. Under such circumstances we think that they are estopped to rely on any such defense.

Over the objections of the plaintiff, the defendants were permitted to testify that they signed the bond relying upon the assurance of the cashier of the Cheriton Bank that that institution was solvent. Since it subsequently developed that the bank was not solvent, the defendants contend that their signatures to the bond were procured by fraud.

While the cashier denied that he had made any such representations or assurances to the defendants, and the verdict of the jury settled this issue in favor of the plaintiff, the defendants complain that the court erred in certain language used in one of the instructions granted at the request of the plaintiff submitting the issue to the jury.

The view we take of the matter makes it unnecessary that we discuss whether or not the particular instruction complained of was correct.

In *Towner* v. *Lucas' Ex'r*, 13 Gratt. (54 Va.) 705, this court held that parol evidence was not admissible to prove, on behalf of one who had executed as surety a bond regular on its face, that he was induced to sign it upon the express promise of the obligee that he would not be required to pay any part of it.

Under the same principle it was held in *Clark* v. *Miller*, 148 Va. 83, 138 S. E. 556, that the defendants could not show that the plaintiff had orally promised, before the notes sued on were signed, that such notes would not have to be paid by them.

Likewise, in *Crafts* v. *Broadway Nat. Bank*, 142 Va. 702, 128 S. E. 364, it was held that an endorser of a note could not prove that the president of the payee bank had orally told him that a note regular on its face would not be en-

forced so long as collections of certain collateral were turned over to the payee.

See also, *Conway* v. *American Nat. Bank,* 146 Va. 357, 131 S. E. 803; *Ward* v. *Bank of Pocahontas,* 167 Va. 169, 178, 187 S. E. 491.

Here the defendants claim that before they signed the bond they were assured by the cashier of the Cheriton Bank that it was solvent. From such assurances, they say, they had the right to infer that they would incur no liability in signing the instrument.

If the parol evidence rule precludes the signer of a bond or note from proving that at the time he signed it a direct promise was made to him that he would not be called upon to discharge the obligation, then, surely, the defendants in the instant case are precluded by the same rule from showing that the cashier of the Cheriton Bank made assurances to them from which they had the right to infer that they would not be called upon to perform the very terms of the instrument which they were signing.

Since the defendants had no right to go to the jury on the issue as to whether or not the alleged assurances had been made to them by the cashier, it is not necessary to discuss the instructions given on the subject.

The record shows that on February 19, 1932, ten of the directors, including the defendant S. T. Nottingham, signed a $25,000 bond agreeing to indemnify and save harmless the depositors of the Cheriton Bank against loss by reason of the inability of said institution to meet its obligations.

The defendant T. H. Nottingham did not sign this $25,000 bond. He testified that if he had known that it had been executed by the other directors he would not have signed the $32,000 bond, because, he says, this would have given the Cheriton Bank two bonds guaranteeing the sufficiency of its assets.

But the undisputed evidence is that after the execution of this $25,000 bond it was delivered to and held by M. E. Bristow, Commissioner of Insurance and Banking. It was never treated as an asset of the Cheriton Bank, or of the

Farmers & Merchants Trust Bank, and never came into the possession of either. Upon the subsequent execution of the $32,000 bond and the merger agreement, the $25,000 bond was released as it had been superseded by the bond in the larger amount.

There is not the slightest evidence that the officers or directors of the Cheriton Bank suppressed or concealed from the defendant T. H. Nottingham the existence of the $25,000 bond, or made to him any false representations in respect thereto. Indeed, the evidence shows that when this bond was first discussed by this defendant and the officials of the Cheriton Bank, in 1935, the latter were under the impression that this defendant, along with all of the other directors, had actually signed the bond, and so told him.

Under these circumstances we do not think that there is any merit in the claim that this defendant was released from his obligation merely because he did not know of the execution of the $25,000 bond, which was subsequently cancelled and in no way involved in the merger agreement.

We will not discuss in detail the other assignments of error. Suffice it to say that upon a careful examination of the record we have reached the conclusion that neither of these defendants has any meritorious defense to this action; that the trial court committed no reversible error in the proceedings; and that the jury brought in the only verdict which could properly have been found under the law and evidence of the case. Accordingly the judgment is

*Affirmed.*